## 5340. CARVER *v.* THE STATE.

1. The evidence authorized the conviction of the accused of voluntary manslaughter, and the extracts from the charge of the court on this subject, of which complaint is made, are not erroneous.
2. It is never error, requiring the granting of a new trial, to fail to charge on the subject of impeachment of witnesses, in the absence of a written request so to do.
3. The failure of the judge specifically and accurately to define the terms "justifiable homicide" and "felony" is not cause for a new trial.

DECIDED JANUARY 20, 1914.

Indictment for murder; from Floyd superior court—Judge Wright. October 8, 1913.

*J. F. Kelly, F. W. Copeland,* for plaintiff in error.

*W. H. Ennis, solicitor-general, John W. Bale, Barry Wright,* contra.

POTTLE, J. 1. Nick Carver was indicted for murder and was convicted of voluntary manslaughter. It is insisted by his counsel that there is no part of the evidence, or of the defendant's statement to the jury, which authorized the verdict, and that the accused was either guilty of murder or justifiable. It appears, from the evidence, that Tom Carver, the father of the accused, and one Aycock were engaged in an altercation, each having a knife and apparently preparing to use it. Several persons were standing near, including Stewart (the deceased) and Nick Carver, the accused. Stewart interposed with the suggestion that if the disputants must fight, they discard their knives and have a "fair fight." Thereupon Aycock handed his open knife to Stewart, and Carver handed his to another bystander. After this, according to some of the evidence, Aycock was reluctant to fight and Stewart pushed or shoved him towards Tom Carver. At this the assailants went together, and fell, Aycock falling on the ground, and Tom Carver upon him. The evidence is in some conflict as to what took place thereafter, but, according to the testimony of two or three witnesses, Stewart approached the place where the assailants were on the ground, with Aycock's open knife still in his hand, and told Aycock to come out from under old man Carver, that this was not his place, and then said that if Aycock did not come out, or if Carver did not let him up, he would cut Carver's throat. Thereupon, suddenly and without warning, the accused, with a club, which he had picked up

somewhere near-by, rushed up and struck Stewart on the back of his head, and he died as the result of the wound thus inflicted. There was no evidence that Stewart made any attempt to carry his threat into execution. If he had done so, and the life of Tom Carver was in danger, Carver's son would have had the right to defend his parent, and would have been justifiable, under section 74 of the Penal Code. But there was evidence from which the jury could have inferred that this was a mere idle threat on the part of Stewart, that he made no attempt to carry it into execution, and that he did not intend to do so. The question whether the circumstances were sufficient to justify the excitement of passion, and to exclude all idea of deliberation and malice, was a question for the jury. It may be they could have found that the circumstances were such as to excite the fear of a reasonable man that Tom Carver's life was in danger, and so have justified the son in killing, to protect his father against a real or apparent danger. But certainly the evidence did not demand this conclusion. The jury were authorized to find that the circumstances, while not sufficient to excite the fears of a reasonable man that Tom Carver's life was in danger, or that a felonious assault was about to be made upon him, were sufficient to justify the excitement of passion. We think therefore that the trial judge properly instructed the jury upon the law of voluntary manslaughter, and that the verdict finding the accused guilty of this offense was not without evidence to support it. The judge's charge was in harmony with this view, and was not erroneous for any reason assigned.

2. Complaint is made in the motion for a new trial that the court charged the jury on the subject of impeachment of witnesses by proof of bad character, and did not charge on the subject of impeachment by proof of contradictory statements. This ground of the motion was practically abandoned in the brief of counsel for the plaintiff in error. The trial judge is not bound to charge on the subject of impeachment at all, unless requested in writing so to do. See *Walton* v. *State*, 12 *Ga. App.* 551 (71 S. E. 891).

3. The trial judge having fairly instructed the jury as to the circumstances under which the accused would be justifiable, it is not cause for a new trial that he failed to explain further the meaning of the words, "justifiable homicide," nor is it error that the court did not define the word "felony," the jury being instructed

merely that if the accused acted on the fear that a felony was about to be committed upon his father, he would have been justifiable. Ordinarily the failure to define the meaning of a well-known expression like the word "felony" is not erroneous. If the failure to do so in the present case had any effect at all, it operated in favor of, rather than against, the accused.

<em>Judgment affirmed. Russell, J., dissents.</em>